**Michael RAICEVICH, By and Through his Conservator, Shelley DEROMEDI, Plaintiff,**

v.

**PLUM CREEK MEDICAL P.C. a Colorado corporation, and James W. Terbush, M.D., Defendant.**

Civ. A. No. 92–K–253.

United States District Court, D. Colorado.

April 30, 1993.

M. Susan Kudla, Elizabeth Zerga, for plaintiff.

Robert Ruddy, Mark J. Kaplan, for defendant.

MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This diversity case is before me on defendant's motion to dismiss for failure to comply with the Colorado Governmental Immunity Act ("CGIA"), Colo.Rev.Stat. § 24–10–101 (1988 and Supp.1992), and plaintiff's motion to reopen discovery. At a hearing on April 19, 1993, I denied the motion to dismiss and granted the motion to reopen discovery. I write separately today to explain fully my

views on the CGIA in the context of this case.

## I. Background

Plaintiff was seen at defendant's medical clinic on February 16, 1990. He was in a long leg cast for treatment of a torn left achilles tendon. He complained of feeling sick, fatigue, loss of appetite, nausea, fever, and chills. A technical assistant took down this information and recorded his vital signs. The clinic's records do not show who treated plaintiff. The records do show that a rapid strep test was done and interpreted as normal. Someone called in two prescriptions, one an antibiotic, another an anti-inflammatory. Although Dr. Terbush's name was signed on the prescription form, he denies seeing plaintiff or signing the prescription. Plaintiff received a bill for $49.60 on which a diagnosis of bronchitis was circled. In addition to Dr. Terbush, a nurse practitioner, a registered nurse and a student nurse practitioner also were working at the clinic on February 16, 1990. None recognizes any of the handwriting on any of the critical documents or admits seeing the plaintiff that day.

Suzanne Nash, then a third year medical student from the University of Colorado ("C.U."), was also present in the clinic. She was participating in a clerkship with Dr. Terbush, who then had a limited appointment as a clinical instructor from C.U. Dr. Terbush denies that Ms. Nash would have seen plaintiff. He believes that the registered nurse probably saw plaintiff. Ms. (now Dr.) Nash, however, has recently claimed that she wrote part of the lab slip for the strep test. She now believes she saw plaintiff as a patient that day. On February 16, 1990, Ms. Nash had only recently begun her internship. In the early phase of it, she merely followed physicians and watched. Later, she was allowed to do her own workup of a patient, after which she and the doctor would compare notes, diagnosis, and treatment plans. According to her, however, the doctor's treatment plan was always controlling.

Four days after visiting the clinic, plaintiff suffered a stroke caused by blood clots from his leg. He suffered significant brain damage and speech loss as a result. His experts will testify that the defendants rendered grossly substandard medical care, violated the statutes, rules and regulations concerning the use of nurse practitioners, and set up a system that allowed non-physicians to provide health care without proper review by a doctor thus creating a substantial risk of harm to patients.

Defendants filed the motion to dismiss on January 29, 1993. It alleges that the defendants are immune from suit because plaintiff failed to file an appropriate notice of a claim within 180 days of his injury. The Colorado Governmental Immunity Act requires such notice as a jurisdictional prerequisite.

## II. Discussion

The Colorado Governmental Immunity Act provides that

> no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his duties and within the scope of his employment, unless such an act was willful and wanton, except as provided in this article....

A "public employee" includes any doctor [and his assistants] who

> volunteers his services at or on behalf of a public entity, or who volunteers his services as a participant in the community maternal services program....

The statute nowhere defines "volunteer." It usually means, however, that one is working for free. Under Colorado's Volunteer Service Act, § 13–21–115.5(3)(c), a volunteer means

> a person performing services for a non-profit organization ... or a hospital without compensation, other than reimbursement for actual expenses incurred. ... The term also includes a licensed physician performing medical services or providing medical care or treatment as a volunteer for a non-profit organization, a nonprofit corporation, or a hospital.

### 1. The Meaning of "Volunteer"

Based on these statutory definitions, plaintiff asserts there are three reasons to deny the motion to dismiss. First, he says the act does not apply because he paid for his evaluation, diagnosis and treatment, and the de-

fendants were the direct recipients of that money. Thus, Dr. Terbush[1] was not a volunteer within the meaning of the statute. Furthermore, plaintiff asserts Dr. Terbush didn't perform his services "at a public entity" or "on behalf of a public entity." Rather, he performed his services at Plum Creek Medical on behalf of the P.C. and himself. I agree with plaintiff's argument in all but one respect. To the extent that Dr. Terbush actually saw plaintiff in conjunction with Ms. Nash, he was performing his teaching services (for which he might have immunity) concurrently with his for-profit services. The statute is silent, however, on such a possibility and the record so far is devoid of the facts to support the argument.

### 2. Causation

Plaintiff's second argument focuses on the fact that Ms. Nash never acted in a vacuum. She never had any ultimate authority to diagnose or treat patients at the clinic. She merely compared her evaluation and treatment to that of the primary physician for pedagogical purposes. Thus, plaintiff asserts, nothing she did or did not do played any role in the outcome of plaintiff's care at Plum Creek. These observations are correct as far as they go, but I do not see how they implicate the CGIA. Even if Ms. Nash cannot be causally linked to the negligence, it does not necessarily follow that Dr. Terbush was not acting as a volunteer on behalf of the medical school.

### 3. Material Dispute of Fact

Plaintiff's third argument is that I cannot grant the motion to dismiss because there is a material dispute of fact surrounding Ms. Nash's role in the events of February 16, 1990. Ms. Nash does not recall "seeing" plaintiff at all,[2] she only claims that she may have seen him because she identified her handwriting on a portion of the strep test lab request. Dr. Terbush testified that Ms. Nash did not "see" any patients on February 16. Ms. Nash says she would not evaluate,

diagnose or treat any patients without an independent evaluation by a physician. Dr. Terbush initially testified he did not see plaintiff but recently has claimed he now does not recall if he saw plaintiff. Dr. Terbush also initially said that no other doctors were present that day, but records plaintiff has since discovered suggest that other doctors may indeed have been present. Thus, since there is so much uncertainty about who did (or did not) do what to whom, plaintiff says I should not grant the motion to dismiss.

I agree that there is a factual dispute about whether Ms. Nash saw plaintiff or not. I also agree that the factual dispute makes it impossible for me to grant the motion to dismiss. Even if it were now clear that Ms. Nash had seen plaintiff under Dr. Terbush's supervision, I would not grant the motion to dismiss. Although the CGIA is in derogation of the common law and thus should be construed strictly, I cannot ignore that the intent of the statute is to protect public employees. The legislature did not intend the statute to cover the private practice of part-time participants in the educational process. Were the statute applicable, it would nonetheless be equitably tolled in a situation such as this, at least until plaintiff knew or should have known that Dr. Terbush was acting in a quasi-governmental capacity vis a vis Ms. Nash. To put it another way, there must be actual or constructive notice to potential patients that a doctor and his assistants are functioning as public employees. No such notice was given here.

### III. Conclusion

I accordingly deny the motion to dismiss.

---

1. Although defendants lump Dr. Terbush and Plum Creek Clinic together in the motion to dismiss, Plum Creek is not a health care practitioner and thus cannot qualify under any circumstances as a public employee or entity.

2. "Seeing", as plaintiff points out, can mean anything from observing plaintiff while another doctor or nurse examined him to seeing plaintiff in order to do her own examination for learning's sake.